Case number 15-5003, Prisology Appellant v. Federal Bureau of Prisons. Mr. Newland for the Appellant, Mr. Fassenroth for the Appellee. Mr. Newland for the Appellant, Mr. Fassenroth for the Appellee. Good morning and may it please the Court. Zachary Newland for Appellant Prisology. Your Honors, at issue today is whether Prisology has informational standing to compel production of certain records under 5 U.S.C. 552 A2B, also known as the E-FOIA Automatic Disclosure Provisions, via the Administrative Procedures Act. As a starting point, Your Honors, I'd like to point out that neither the District Court nor the government have contended that, had Prisology submitted a specific request under traditional FOIA 552 A3, that we would be entitled to standing in this case. So in the most narrow sense, Your Honors... Do you guys want this information for your own purposes? Well, yes, Your Honor, we do want it for our own purposes, but more particularly, Your Honor, I would say that... Have you said that anywhere? I believe we said that in our complaint, Your Honor. I didn't see it anywhere in your complaint. I would have to, and if I may, on rebuttal, I'd be more than happy to point that out. Okay. But the reason... Maybe you don't need to file a formal request, but don't you need to particularize the injury to say, there's this information, we have a statutory right to it, and we would like it? Well, Your Honor, I think that this Court's precedent points out, in Natural Resource Defense Counsel, as well as in Dicton's Zivotoski, Your Honor, that the reason that we want the particular information is not relevant to... I'm not saying you have to say why you want it or what you're going to use it for, but don't you have to do something to distinguish yourself from someone who simply was strolling through governmental websites and noticed that the government wasn't complying with the law here? How do I know that's not what this is about? Well, no, Your Honor. I don't think that this is what this particular case is about, because what this case is about is a statute that provides a particular right to information. Well, does it provide a right? The FOIA, what you call the traditional FOIA, does provide a right. It says that if you ask for the information, you can get the information. This section provides a duty on the government, but I think what we're getting at is, does it, in fact, provide a particularized right? And if it does, have you shown that yours is violated any differently than the general public? Yes, Your Honor. To the first point, I would point out that it does provide a particularized right in that... Tell me where it does that. Well, Your Honor, I think that the automatic disclosure provisions merely says... They clearly create a duty. Yes, Your Honor. But not every duty creates a justiciable right on the part of a particular plaintiff. Absolutely, Your Honor. So where are you getting a right from that differentiates you from the general public? And more important and more directly, where are you getting a harm to that right that differentiates you from the general public? Well, Your Honor, if I'll pivot to the harm analysis first, the harm is particularly the denial of the information and the freedom... How is that different than the whole world? You know that standing requires a particularized harm to the particular plaintiff or claimant. Yes, Your Honor. You understand that? Yes, Your Honor. But how are you any different than the general public with respect to the failure to publish? Well, Your Honor, I think this Court addressed that exact argument in Natural Resource Defense. Was Natural Resource a publication case or was it a traditional FOIA? It was actually a case under the Federal Advisory Committee Act, Your Honor. Yeah, but it was not either one, which is it analogous to, traditional FOIA or publication? It was FACA, right? Yes, Your Honor. I would say that it's analogous to e-FOIA in that the plaintiffs were asserting a violation of an automatic disclosure provision under FACA, and the district court put essentially the plaintiffs in the same position that we are here, Your Honor. They said if you'd had a FOIA request, then you would have had standing. You don't have a FOIA request, and so we're going to say there's no standing. We dismiss the complaint. I believe, Your Honor, that this Court held... Now, the only thing that was held there in that case is that you didn't have to make a request. It didn't hold that the plaintiffs in that case had standing. It sent the case back. Well, Your Honor, I think that's an alternative in this case that this Court may have, is that there's no request in this case, and I believe that the district court suggested that had there been a request, there would be standing in this case. Yeah, there might well be. This would be a different case if you had a request, but you don't have a request. Yes, Your Honor. I'm not sure how it is you distinguish yourself from the general public. Well, Your Honor, I think that's because the right, rather, Your Honor, the harm that Congress has identified in creating a legally cognizable interest is the right to the information itself. Whoa. You just presupposed the conclusion when you said Congress created a legally cognizable interest. Yes, Your Honor, I did, and I believe that the automatic disclosure is merely a burden-shifting device, whereas in traditional FOIA, Congress took the step of saying you have to present a request. And it did in the case of publication. That's correct, Your Honor, and I don't think that that's constitutional. So how did you create a legally cognizable interest in an individual that had been breached in your allegation? Well, Your Honor, I'd point out two things. One, the complaint itself stated particularized information that was sought. The complaint itself stated five different things. No, it didn't say that it was sought. It just gave some examples of things that weren't there that the rule required to be there. But I've looked at your complaint numerous times, and at no point do you say, and we want that information. We look at prisons. We want that information. I'm not saying you have to file a formal request, but to particularize the injury, you have to do something to distinguish yourself from anybody who's sitting on the Internet strolling through government websites and says, I've seen a violation. You would agree that wouldn't be enough. If you were just, if you had no interest in prisons whatsoever, you just happened to be strolling around the website and noticed, huh, these folks aren't complying with FOIA. That's bad. And you filed that lawsuit. Would that be permissible under Article III? No, Your Honor, I don't think that that would be. It would not, because it wouldn't be a particularized injury. You just happened to notice the government not complying with the law, correct? That's correct, Your Honor. Okay. And your complaint, that's how I read your complaint. I don't see you ever saying there's a legal obligation to have this information in there, and we want that information in any way, shape, or form, whether a FOIA request, whether a letter, whether any articulation. I don't see that. Well, Your Honor, I think that this Court's precedents, as well as the Supreme Court's precedents, point to the fact that the harm itself is not that we want it. It's that the information is not produced as it's supposed to be. Are you familiar with the National Environmental Policy Act? Yes, Your Honor. Okay, NEPA. And the purpose of NEPA statements is to inform the public. That's one of the purposes, anyway. So that means, under your theory, that an individual, living wherever they're living, doesn't matter, can bring a lawsuit to compel, and has standing to bring a lawsuit to compel a NEPA statement to be issued. No, Your Honor. I wouldn't take it to that extreme. The Supreme Court had a case like that. It's called United States v. Richards. And the Supreme Court held that the individual that brought that case did not have standing, and the reason they didn't have standing is they haven't differentiated themselves from anybody else in the general public. And I don't see how this case, the case that you brought, is any different than the situation in Richardson. Tell me what the difference is. Well, Your Honor, I think what I would go back to again is this Court's precedence in informational injury cases that won. That's a Supreme Court case dealing with informational injury. Yes, I agree, Your Honor. Yes, I would agree, Your Honor, and I would not contest the Court's characterization of that case. What I would state is that the primary, if not the sole, purpose of FOIA is to provide information, to provide information to citizens of the United States. It's the same as the National Environmental Policy Act. Well, Your Honor, I would slightly disagree with the National Environmental Policy Act in that I believe that there are more than one policies furthered by that act. Well, Your Honor, I think FOIA is different, as the Court has repeatedly held in its decisions, as it did in Spokio, citing a dicta with approval, the line of cases under public citizen, which— FOIA has a number of different purposes, not simply to inform the public. It's also to keep the agencies honest because they know that whatever decisions they make or whatever policies they adopt will eventually become public. I would agree with that, Your Honor. Then tell me what the difference is between your complaint and the complaint in Richardson. The difference between our complaint and the complaint in Richardson, Your Honor, is that the automatic disclosure in and of itself, in the FOIA context, the reason, the harm, what we wanted to do with the information had our complaint been different and said, and this is why we want it. I don't think for constitutional purposes that would be relevant to the extent that it would change the standing analysis. We have an injury in fact in that Congress has created a procedural venue under e-FOIA, the different provisions which were enacted in 1996, which we contend their disclosure falls under Natural Resource Defense Council and are functionally the same as those in fact. How do you differentiate yourself from any other member of the public? Well, Your Honor, we believe we're a nonprofit organization that advocates for the interest of prisoner rights. So what? Well, our interests are different in that we pursue litigation sometimes and also as well as prison reform strategies in Congress, and we need this information. Well, yeah, but that's not, you didn't allege that in your complaint. That's the problem. If you said that in your complaint, it would be a very different case. Well, Your Honors, unfortunately that's the universe that we're dealt with here today, and I don't think that the lack of stating those reasons, as Zivotofsky points out, should be dispositive in and of itself. Was this dismissed with or without prejudice? I'm sorry, Your Honor. Was the case dismissed with or without prejudice? I believe it was dismissed with prejudice, Your Honor, but I'm going to go back and review for your question during my rebuttal time if I could, and I can let you know definitively if there are no further questions. Thank you. Thank you. Good morning. May it please the Court. Peter Pfaffenroth for the Bureau of Prisons. The Court has really zeroed in on the problem here. Essentially, as long as he's ---- Was it dismissed with or without prejudice? I just can't tell from the opinion. I guess I don't have the order here in front of me. I do. It's on page 19 of the appendix, and it does not actually specify whether it is or was that with or without prejudice. So that means without prejudice? I don't agree with that, Your Honor. Ordinarily, at the close of litigation, if they do not seek a timely amendment under Rule 59E, you know, to alter or amend the judgment, and that time obviously has passed, they instead sought to come to this Court. As the Court pointed out in Hancock at the very end of that decision that this Court issued in July, the time to seek amendment has passed. You know, you can't come to this Court and say, yes, now is the time. I guess this all seems like a monumental waste of time. This is an ongoing injury. Maybe it's an ongoing injury. Do you know, is BOP now complying with this disclosure obligation? If you want to talk about the merits, I'm happy to, Your Honor. I'm just asking if there's an ongoing injury here. They wanted information, and they think they said the right stuff. At least I'm not sure it's there in the complaint, but he's going to educate me on rebuttal. But if we thought it wasn't there in the complaint, that they meant for it to be there, and as long as they said a few other things, it would be okay, and they could have said them, and they mean them, and here we are. On those issues, Your Honor, I would invite the Court's attention to a case called Tereshock v. BOP, which this Court summarily affirmed last summer. I believe Your Honor was actually on that panel. I can give you the case number if you'd like. Effectively, I believe they are really misunderstanding what the proactive disclosure requirements of the FOIA require, and what they're asking for are all administrative remedy adjudications. There are literally hundreds of thousands of those throughout the country every year. Those are things like, I don't like the food, my pillow's too hard. These are not kind of adjudications. Those aren't required to be disclosed as your argument? I believe that is a fundamental misapprehension of what the proactive disclosure requirements state. Let me just get you that case number in case you do want to look it up. The Court in the summary affirmance order did not actually provide any analysis on this proactive disclosure point. I did argue it in my summary affirmance motion, and it was discussed by the District Court, which this Court summarily affirmed. It's a summary affirmance, though. It's not precedent in this Court. Correct? Absolutely. The case number, just for your convenience, is 14-5278, and the summary affirmance is dated June 29, 2015. Does the United States concede that the statute even gives, for a court review of a failure to publish, as opposed to the fairly explicit statutory creation of a remedy for the violation of what your opposing counsel has called traditional FOIA? I think that their argument substantially would read the concrete injury requirement entirely out. Let's forget about the constitutional. That constitutional, then, does the statute create a remedy for failure to publish? I'm not aware of any kind of civil thing. The statute takes control of the demand for FOIA and creates an action. Now, yesterday, the United States did not so concede, I will tell you. They were contesting whether the statute even allows whether there's jurisdiction at the statutory level for it. And I don't disavow that position at all. I'm not aware of any authority that has ever required, under the proactive disclosure requirements, the government to take a certain action. Why wouldn't the APA be a basis for coming in and saying, assuming they made a standing showing? I want to go back to the issue we had yesterday with the APA. I'm not familiar with the case that was argued yesterday, and I don't want to in any way concede issues in this case. I didn't want to interrupt you, but I didn't want him to disavow something he made yesterday. Never mind. You can take the fifth. Thank you, Your Honor. I'm pleased to do so. When you get back to the building, it's the OLC case that was argued yesterday that had the APA issue in it. Thank you. And this judge was not on the panel with me yet. These judges were not. If the Court has nothing further— Do you want to address the Johnson case? I'm sorry, Your Honor. Which case was that? The NRDC v. Johnson. Oh, NRDC. Thank you. Because your brief was all about they have to submit a FOIA request. And that seems to me something to have standing. They had to submit a request. And that seems to be foreclosed by Johnson, as opposed to them having to make some representations about their desire for this information or their injury from not having this information to be specific. Right. It was all about requests, and that's not accurate. Certainly there would be no doubt that they have standing. That would make it much easier. It doesn't have to be a request as opposed to a representation. The Court's characterization of the NRDC v. Johnson case earlier in this argument was correct, which is NRDC was a very limited decision. It said that you still have to show the other requirements of standing. You must show harm. You must show a concrete, particularized injury. And the last paragraph of the NRDC decision makes clear that the Court is offering no opinions on those other standing requirements, and that is fundamentally the problem here. No, but to show injury, you don't have to submit a FOIA request when there's a statute. You still have to show injury, but you don't have to do it through the particular medium that I had read your brief to be emphasizing to us today. Certainly, I think the brief was showing an illustration of how standing could be established. But you would agree there's other ways they could do it when you're talking about this type of disclosure obligation. That is, right. So you have to file a request for them. Right. No, you should not have to file a request for something which, you know, there's some other requirement that it be out there. If they filed a FOIA request, then it would encompass 100,000 documents, which is what you say every year. What would the charge be for them? It would be very large. In the terror ship case that I mentioned earlier, there was a declaration by BOP. I don't recall if it quantified the amount that would be required, but it said there were over 200,000 requests, and that particular suit that they believed would be responsive. And that's obviously a charge. I could ask my agency counsel. Ten cents a page, Your Honor. Ten cents. That's a big number with 200,000 documents. That's certainly true, Your Honor. I mean, the idea that what the plaintiffs, the appellants here, have characterized as falling within the e-FOIA amendments of final opinions, including concurring and dissenting opinions, as well as orders made in the adjudication of cases, encompasses things like grants and denials of requests for compassionate release and private settlements outside of litigation, et cetera. These are the kinds of things which happen every day in all agencies. Well, maybe not compassionate release, but, you know, every agency presumably engages in settlements, but they don't have to publish every single one. Does the government comply with FOIA requests electronically now, rather than in hard copy, post them on a website? Certainly. Every agency has something called an e-FOIA reading room. The Bureau of Prisons does, in fact, have such a reading room. It has things like staff manuals. It has the program statements that govern BOP. It has various financial records about its budget. What I'm thinking about is I file a FOIA request for a certain material and say, look, I don't want to pay the fee. Don't give me hard copies. Just post it on your website. Your Honor, that's not quite how it works. What the e-FOIA provisions require is that matters of particular interest need to go up on the website, so not every FOIA request is going to go up on the website. You have to expect repeated requests for the information, correct? Right. That's my understanding is you anticipate multiple requests. That's right. And if the court were to look at, you know, the e-FOIA reading room for numerous agencies, you would see certain kinds of records are the ones that they think are substantial public interest. And we've had other litigation in my office before this court in which we've talked about manners of trying to winnow down the burden financially on plaintiffs where we worked out on an ad hoc basis with the plaintiffs ways to provide the records electronically. It's typically on CD. There can be a charge per CD because, of course, that has its own processing fees. But it winds up being a lot less than the per page copying charges that are established by regulation. Okay. If there's nothing further, Your Honor. No. Thank you. We'd ask that the decision be affirmed. Thank you. Mr. Newland, we'll give you two minutes. I'm sorry, Your Honor. We'll give you two minutes. All right. Thank you, Your Honor. If I may just very briefly, Your Honor, I would not disagree with your characterization of the complaint upon review. I would reiterate our position that the injury itself that we have suffered is a denial of the information which we believe that we were entitled to receive under the automatic disclosure provisions. And we believe that dismissing this case on standing grounds would require the court to say that the animating purpose behind the E-FOIA amendments is, in some way or shape or form, different than the animating purpose behind the regular FOIA amendments. I guess all we would have to say is you haven't shown us how you were injured by the violation. We wouldn't have to say anything about the merits of the obligation. Wouldn't we just have to accept what you just said is that your complaint does not identify how you were injured by the lack of this information? Well, no, Your Honor. I think that our complaint sets forth that there is a violation of the statutory procedural right, which the Supreme Court has acknowledged in and of itself is enough to create standing. Where have they said that violation of a procedural right is automatically standing? A violation of the FOIA right? I would say in Public Citizens, Your Honor, they have stated that. That was FACA, and they asked for the information. Okay. I agree with you, Your Honor. I would say that violation of the right to information under FOIA in and of itself is the injury. How does that differentiate you from the public at large? Well, Your Honor. It is black letter for a standing law that you have to have a particularized injury for the claimant before the court. Well, Your Honor. When I say that they validated their duty, that doesn't even speak to the question of whether you've alleged such an injury. Well, Your Honor, I think that this is directly analogous to, like we pointed out again, the Natural Resource Defense Council. And I understand the court's concerns about the particularization requirements here, Your Honor. But we would contend that we've done enough, and we'd ask the court to reverse and demand. Okay. Thank you. The case is submitted.
judges: Millett, Sentelle, Randolph